UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| MICHAEL M. BEAL, in his capacity as Court-appointed Receiver,<br><br>Plaintiff,<br><br>v.<br><br>REGIONS FINANCIAL CORPORATION; REGIONS BANK; ADEJARE BAKARE; A & BAKARE 777, LLC; and DOES 1-5,<br><br>Defendants | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT REGIONS BANK'S [17] MOTION TO DISMISS AND GRANTING IN PART AND DENYING IN PART REGIONS FINANCIAL CORPORATION'S [38] MOTION TO DISMISS**<br><br>Case No. 2:26-cv-00017-DBB-JCB<br><br>District Judge David Barlow |

This matter is before the court on Defendant Regions Bank's Amended Motion to be Dismissed with Prejudice from Plaintiff's Complaint[1] and Defendant Regions Financial Corporation's Motion to be Dismissed with Prejudice from Plaintiff's Complaint.[2] Having reviewed the briefing on Regions Bank's and Regions Financial Corporation's (collectively, "Regions Defendants") motions to dismiss, and for the reasons that follow, the court GRANTS in part and DENIES in part the motions.

[1] Defendant Regions Bank's Amended Motion to be Dismissed with Prejudice from Plaintiff's Complaint ("Regions Bank's Mot."), ECF No. 17, filed Mar. 19, 2026.
[2] Defendant Regions Financial Corporation's Motion to be Dismissed with Prejudice from Plaintiff's Complaint, ECF No. 38, filed May 27, 2026.

## BACKGROUND[3]

This action stems from $266,091.80 of funds sent to an unintended account due to actions taken by hackers who obtained an office manager's session key. The Plaintiff in the matter is Michael M. Beal, a court appointed receiver ("Receiver") for the companies Blackville Solar II, LLC, Richardson Solar, LLC, Diamond Solar, LLC, and Edison Solar, LLC ("Companies").[4] Receiver was appointed in August of 2024 for these companies at the request of Celtic Bank ("Celtic"), a Utah corporation, in a separate action in this district.[5]

In December of 2024, Receiver had negotiated renewal of Companies insurance policies with the insurer CAC Specialty ("CAC").[6] Receiver received an invoice from CAC with wiring instructions to pay the negotiated premiums.[7] But just six hours later, Receiver received a second invoice that appeared to be sent from CAC with a cover email informing Receiver that the initial wiring instructions were wrong and providing Receiver with new wiring instructions.[8] As part of the payment process, Receiver forwarded the second invoice to Celtic and requested that it wire the funds.[9]

About a week later, Celtic wire transferred $266,091.80 in order to pay the insurance premiums according to the second invoice's wiring instructions.[10] But after CAC contacted Receiver claiming it had never received payment, "Receiver discovered that the Second Invoice

---

[3] Because this matter is before the court on motions to dismiss, the court takes the well-pleaded facts from Plaintiff's Complaint as true. *See, e.g.*, *McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1127 n.2 (10th Cir. 2024).
[4] Compl. ¶ 1, ECF No. 1, filed Jan. 7, 2026.
[5] *Id.* ¶¶ 1–2 (citing Case No. 2:24-cv-140-HCN-CMR ("Receivership Action"), ECF Nos. 106, 107).
[6] *Id.* ¶¶ 11–12.
[7] *Id.* ¶ 12.
[8] *Id.* ¶ 13.
[9] *Id.* ¶ 14.
[10] *Id.* ¶ 15.

was sent as part of a fraudulent scheme."[11] As alleged, Receiver's email was hacked by the DOE defendants who obtained the "session key" of one of Receiver's employees, which "enabled the hackers to monitor [the employee's] email address."[12]

Those hackers sent the second invoice with altered wiring instructions for a Regions Bank account in the name of A & Bakare 777, LLC ("Regions Account").[13] Adejare Bakare opened the Regions account on November 25, 2024, with an initial $100 deposit, which had no further activity until December 19 when it received the wire transfer in the amount of $266,091.80 from Celtic.[14] That same day, Mr. Bakare attempted two wire transfers out of the Regions Account to a different bank in the amounts of $20,000 and $50,000 (one to an account held in Mr. Bakare's name).[15] However, those transfers were returned to the Regions Account with wire report notations stating: "POSSIBLE FRAUD CLOSEOUT IN PROCESS" and "POSSIBLE FRAUD."[16] Over the next several weeks, the $266,091.80 in funds were all transferred out of the Regions Account before its closure.[17]

Thereafter, Receiver, in his capacity as court-appointed receiver for Companies, brought this suit against Regions Financial Corporation (a Delaware company), Regions Bank (an Alabama chartered banking institution with headquarters in Birmingham, Alabama and branches in sixteen states), Mr. Bakare (a citizen and resident of Indiana), A & Bakare 777, LLC

---

[11] *Id.* ¶¶ 16–17.
[12] *Id.* ¶ 18.
[13] *Id.* ¶¶ 19–21.
[14] *Id.* ¶¶ 22–24.
[15] *Id.* ¶¶ 25–27.
[16] *Id.* ¶¶ 28–29, 31.
[17] *Id.* ¶¶ 32–33.

("AB777") (Mr. Bakare being its sole member), and unknown DOES 1-5.[18] Receiver brought four claims against only Mr. Bakare, AB777, and the unnamed DOES: (1) conversion, (2) unjust enrichment, (3) fraudulent misrepresentation, and (4) civil conspiracy.[19]

Receiver also brought two claims against the Regions Defendants: (1) negligence and (2) aiding and abetting fraud/conversion.[20] Under its claim for negligence, Receiver alleges that Regions Defendants "owed duties of reasonable care in opening, monitoring, and handling transactions on the [Regions Account], including duties to implement and enforce commercially reasonably KYC/AML and fraud detection procedures."[21] Regions Defendants allegedly breached these duties by:

(1) "permitting a newly opened, minimally funded account to receive a $266,091.80 wire";

(2) "allowing rapid dissipation shortly thereafter";

(3) "failing to freeze or escalate after . . . wires [were returned] . . . with 'POSSIBLE FRAUD' warnings"; and

(4) "permitting closure of the account . . . without remediation."[22]

As for Receiver's aiding and abetting claim, the Complaint alleges that "[w]ith actual or constructive knowledge of red flags and fraud notices, Regions . . . substantially assisted the

[18] *Id.* ¶¶ 3–7.
[19] *Id.* ¶¶ 34–53.
[20] *Id.* ¶¶ 54–61.
[21] *Id.* ¶ 55.
[22] *Id.* ¶ 56.

conversion by processing and permitting rapid dispersals of the funds and failing to prevent further loss."[23]

## STANDARD

"In evaluating a motion to dismiss, the court must take as true all well-pleaded facts, as distinguished from conclusory allegations, view all reasonable inferences in favor of the nonmoving party, and liberally construe the pleadings."[24] "Still, . . . [a] complaint cannot rely on labels or conclusory allegations—a 'formulaic recitation of the elements of a cause of action will not do.'"[25] Instead, the "complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"[26] Under the plausibility inquiry, the court reads "[P]laintiff's allegations . . . in the context of the entire complaint" to consider whether Plaintiff has "nudge[d] their claim across the line from conceivable to plausible."[27]

Therefore, "[d]ismissal under Rule 12(b)(6) is appropriate only if the complaint, viewed in light most favorable to the plaintiff, lacks enough facts to state a claim to relief that is plausible on its face."[28]

## DISCUSSION

Regions Defendants move to dismiss Receiver's claims against them on several grounds. Regions Defendants first argue that Uniform Commercial Code ("UCC") Article 4a displaces Receiver's common law negligence and aiding and abetting claims.[29] Regions Defendants then

---

[23] *Id.* ¶ 60.
[24] *McNellis*, 116 F.4th at 1130–31 (citation modified).
[25] *Greer v. Moon*, 83 F.4th 1283, 1292 (10th Cir. 2023) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).
[26] *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).
[27] *Id.* (citation modified).
[28] *Abdi v. Wray*, 942 F.3d 1019, 1025 (10th Cir. 2019) (citation modified).
[29] Regions Bank's Mot. 4.

argue in the alternative that Utah law applies to these claims and, under that law, the claims against them must be dismissed because banks like Regions (1) owe no duty whatsoever to non-customers, and (2) have "no duty to investigate and monitor transactions."[30]

The court begins by resolving the choice of law question before addressing preemption and challenges to the specific claims.

## I. Choice of Law

Receiver argues that Alabama law applies to its claims because Regions Bank is an Alabama chartered bank whose policies regarding its banking practices originate from its Alabama headquarters.[31] Regions Defendants disagree. They argue that Utah law applies because the conduct at issue involved a receiver appointed in Utah, by a court in the United States District Court for the District of Utah, and for the benefit of a Utah corporation (Celtic).[32]

"A federal court applies the choice of law rules of the state in which the district court sits."[33] Thus, the court applies Utah's choice of law rules.

Utah courts "apply the most significant relationship approach as described in the Restatement (Second) of Conflict of Laws in determining which state's laws should apply to a given circumstance."[34] Where the claims at issue "sound in tort," Utah considers "which state 'has the most significant relationship to the occurrence and the parties.'"[35] Restatement "Section

---

[30] *Id.* at 10–11.
[31] Receiver's Mem. in Opp'n to Defendant Regions Bank's Amended Mot. to be Dismissed with Prejudice from Plaintiff's Compl. ("Receiver's Opp'n") 6, ECF No. 26, filed May 5, 2026.
[32] Defendant Regions Bank's Rely in Support Its Amended Motion to be Dismissed with Prejudice from Plaintiff's Complaint ("Regions Bank's Reply") 3, ECF No. 33, filed May 19, 2026.
[33] *U.S. Aviation Underwriters, Inc. v. Pilatus Bus. Aircraft, Ltd.*, 582 F.3d 1131, 1143 (10th Cir. 2009).
[34] *Waddoups v. Amalgamated Sugar Co.*, 2002 UT 69, ¶ 14, 54 P.3d 1054.
[35] *Id.* ¶ 18.

145 'states a principle applicable to all torts and to all issues in tort' . . . and lists several factors to take into account in determining which substantive law to apply."[36] Those factors are "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered."[37] And Utah courts weigh these factors "according to their relative importance with respect to the particular issue."[38]

Here, the first factor weighs in favor of applying Utah law because the injury occurred in Utah. The Receiver who allegedly fell victim to the wire transfer scam was appointed from a receivership action in the District of Utah. That receivership action was brought by Celtic, a Utah corporation, and Receiver was appointed by the court for Celtic's benefit. In fact, Receiver has pled that it was Celtic itself who wired the lost funds in accordance with the second invoice's instructions.[39] Therefore, because the injury was clearly felt by Celtic, it occurred in Utah.

The second factor largely implicates Utah and Indiana. The funds at issue were wired from Utah by Celtic into the Regions Account, which was allegedly owned by Mr. Bakare (a citizen of Indiana) and A & Bakare 777, LLC (an Indiana company). As a result, the funds were functionally sent from Utah to Indiana, which is where the conduct causing the injury occurred. Alabama's relationship with the injury-causing conduct is limited to Regions Bank being chartered in that state and therefore operating under its relevant laws.

---

[36] *Id.* (quoting Restatement (Second) Conflict of Laws § 145 cmt. a (1971)).
[37] *Id.* (quoting Restatement (Second) Conflict of Laws § 145(2) (1971)).
[38] *Id.* (quoting Restatement (Second) Conflict of Laws § 145(2) (1971)).
[39] Compl. ¶¶ 14–16.

The third factor involves both Utah and Alabama. As mentioned, Receiver was appointed in a Utah-based action, by a court in this district, for the benefit of a Utah corporation. Regions Defendants are Alabama companies that are headquartered in the state. And although the remaining defendants are based in Indiana, they are not included in these specific claims.

The fourth factor does not weigh in favor of any particular state law beyond what is addressed in the previous three factors. This is so because Regions Defendants and Receiver have no relationship beyond the injury itself and the conduct causing that injury. Receiver does not allege any relationship with them prior to its claimed injury and filing of suit. Given this, the court gives little weight to this factor as it is not relevant to the claims at issue. Indeed, this factor expressly contemplates that it may not be applicable to certain contexts—the factor has the court consider "[t]he place where the relationship, *if any*, between the parties is centered."[40]

All in all, weighing these factors, the court concludes that Utah has the most significant relationship to Receiver's claims against Regions Defendants. Utah is implicated in all three relevant factors and is the lone place where the alleged injury occurred. The claims' relationship to Utah exceeds any connection to the other implicated states, Alabama and Indiana. Accordingly, the court applies Utah law to Receiver's claims.

---

[40] *Waddoups*, 2002 UT 69, ¶ 18 (emphasis added) (quoting Restatement (Second) Conflict of Laws § 145(2) (1971)).

## II. UCC Preemption of Common Law Claims

UCC Article 4a, codified in Utah law at Utah Code sections 70A-4a-101 to 507,[41] generally governs wire transfers like the one involved in this case.[42] Referred to as a "funds transfer," Article 4a encompasses a "series of transactions, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order" and are "completed by acceptance by the beneficiary's bank of a payment order for the benefit of the beneficiary of the originator's payment order."[43] The originator in those transactions is "the sender of the first payment order in a funds transfer," the beneficiary's bank is "the bank identified in a payment order in which an account of the beneficiary is to be credited pursuant to the order or which otherwise is to make payment to the beneficiary if the order does not provide for payment to an account," and the "beneficiary" is "the person to be paid by the beneficiary's bank."[44]

Accordingly, under Article 4a, when a beneficiary bank receives a payment order,[45] the beneficiary's bank is (subject to exceptions) obligated to make the payment to the beneficiary

---

[41] Although codified in Utah, "the Uniform Commercial Code is national in character, [so] case law interpreting it is also national. Consequently, where Utah's version of the [UCC] is uniform, we rely on case law from other jurisdictions to interpret the [Utah] Code." *Lewinston State Bank v. Greenline Equip., LLC*, 2006 UT App 446, ¶ 15 n.7, 147 P.3d 951 (citation modified)); *accord In re Pilowtex, Inc.*, 349 F.3d 711, 718 n.8 (3d Cir. 2003) (noting that "decisions from other jurisdictions interpreting this same uniform statute [the UCC] are instructive").
[42] *See* U.C.C. § 4A-102, cmt. (A.L.I. & Unif. L. Comm'n 2022) ("[A] funds transfer [is] also commonly referred to in the commercial community as a wholesale wire transfer."). The court recognizes that Utah has not adopted the official comments to the UCC, so they are "not authoritative." *J.R. Simplot Co. v. Sales King Intern., Inc.*, 2000 UT 92, ¶ 40, 17 P.3d 11000. But the court uses the comments for persuasive value, as Utah courts have, because "they are by far the most useful aids to interpretation and construction, promoting reasonably uniform interpretation of the code by the courts." *Dale K. Barker Co. PC CPA Profit Sharing Plan v. Turner*, 2021 UT App 119, ¶ 21, 500 P.3d 940 (citation modified).
[43] UTAH CODE § 70A-4a-104(1).
[44] *Id.* §§ 70A-4a-103(1)–(2), 70A-4a-104(3).
[45] *Id.* § 70A-4a-103(3) (defining "payment order").

and provide the beneficiary notice of that payment.[46] Article 4a also addresses cancellation and amendments of payment orders,[47] as well as when "creditor process"—defined as "levy, attachment, garnishment, notice of lien, sequestration or similar process"—is served on a beneficiary's bank.[48]

Further, Article 4a serves the function of "assign[ing] responsibility, defin[ing] behavioral norms, allocat[ing] risks and establish[ing] limits on liability."[49] Indeed, the UCC's official commentary clarifies that Article 4a is the "exclusive means of determining the rights, duties and liabilities of the affected parties in any situation covered by particular provisions of the Article."[50] So it is "not appropriate" for the court to "resort to principles of law or equity outside of Article 4A . . . to create rights, duties and liabilities inconsistent with those stated in" Article 4a.[51] Those "principles of law and equity" can only supplement Article 4a if they are not "displaced by" it.[52]

The court also takes note of the "underlying purposes and policies of the [UCC] . . . (a) to simplify, clarify and modernize the law governing commercial transactions; (b) to permit the continued expansion of commercial practices through custom, usage and agreement of the parties; [and] (c) to make uniform the law among the various jurisdictions."[53]

[46] *Id.* § 70A-4a-404(1)–(2).
[47] *Id.* § 70A-4a-211.
[48] *Id.* § 70A-4a-502.
[49] U.C.C. § 4A-102, cmt. (A.L.I. & Unif. L. Comm'n 2022).
[50] *Id.*
[51] *Id.*
[52] UTAH CODE § 70A-1a-103(2).
[53] *Davidson Lumber Sales, Inc. v. Bonneville Inv., Inc.*, 794 P.2d 11, 16–17 (Utah 1990) (citation modified).

Regions Defendants assert that Receiver's common law claims impose duties that are preempted by Article 4a.[54] They argue that Article 4a outlines its duties when it receives a wire transfer, they fulfilled its Article 4a duties by crediting the funds to the Regions Account, and they "had no further duty to restrict or return the funds."[55] They reason that Receiver cannot impose obligations for wire transfers not provided for under the UCC.[56] Regions Defendants also argue that Receiver's common law claims "impose . . . affirmative duties to freeze accounts, investigate authorized transaction, and reverse completed wire transfers—obligations that are directly addressed by, and inconsistent with, Article 4a."[57]

Receiver, for its part, asserts that its common law claims are not preempted by the UCC because it alleges "pre- and post-wire transfer conduct."[58] Specifically, Receiver frames its claims as being based on "failure to freeze, escalate, or otherwise stop the drain of the [Regions Account] after receiving concrete fraud indicators," which is "analytically distinct from the underlying completed wire transfer."[59] Receiver argues that because its claims are based on conduct outside of "the mechanics of the funds transfer itself," Article 4a does not displace them.[60]

---

[54] Regions Bank's Mot. 4–10.
[55] *Id.* at 7.
[56] *Id.* at 9 (citing, e.g., *Shapiro v. Wells Fargo Bank N.A.*, 795 F. App'x 741, 751 (11th Cir. 2019) (unpublished) (affirming preemption of claims based on alleged duties "to refuse to accept the wire or freeze the funds" because those duties "are significantly broader than—and thus inconsistent with—the duties stated in [Article 4a]").
[57] Regions Bank's Reply 5 (citing UTAH CODE § 70A-4a-502 ("The bank may credit the beneficiary's account and may allow withdrawal of the amount credited unless creditor process with respect to the account is served at a time and in a manner affording the bank a reasonable opportunity to act to prevent withdrawal.")).
[58] Receiver's Opp'n 11.
[59] *Id.* at 15.
[60] *Id.*; *see also id.* at 12–13 (citing cases in support of this proposition).

Under Utah law, "the scope of a statute may preempt the common law either by governing an area in so pervasive a manner that it displaces the common law or by directly conflicting with the common law."[61] Similarly, the UCC expressly allows for supplemental "principles of law and equity" "[u]nless displaced by the particular provisions of" the UCC.[62] And in general, courts have reasoned that "the issue of preemption can be resolved on a motion to dismiss as long as it is apparent on the face of the pleadings."[63] The court, therefore, considers whether Article 4a's wire transfer provisions "displace" or conflict with Receiver's specific theories of common law liability in its Complaint.

Although some courts have found common law claims similar to Receiver's claims preempted by the UCC,[64] others have allowed certain common law claims based on conduct outside of the wire transfer itself to move forward.[65] After considering the issue, the court finds the Seventh Circuit's decision in *Approved Mortgage Corporation v. Truist Bank*[66] persuasive.

---

[61] *OLP, LLC v. Burningham*, 2009 UT 75, ¶ 16, 225 P.3d 177.

[62] UTAH CODE § 70A-1a-103(2).

[63] *Barents Reinsurance S.A. v. Truist Bank*, No. 6:24-cv-591-ACC-UAM, 2025 WL 2223190, at *6 (M.D. Fl. Jan. 24, 2025) (citation modified).

[64] *See, e.g.*, *Langston & Langston, PLLC v. SunTrust Bank*, 480 F. Supp. 3d 737, 744 (S.D. Miss. 2020) ("[N]egligence claims regarding any duty SunTrust may have had with respect to (1) rejecting a misdescribed wire transfer, (2) immediately freezing funds, or (3) returning funds as a result of the cancellation request are displaced by [the UCC]."); *Shaprio*, 795 F. App'x at 751 (finding Article 4a preemption of claims based, in part, on an alleged failure to freeze funds); *see also Cumis Ins. Soc., Inc. v. Citibank, N.A.*, 921 F. Supp. 1100, 1110 & n.7 (S.D.N.Y. 1996) (dismissing claims on other grounds but collecting cases that have found preemption of claims from a wire transfer).

[65] *See, e.g.*, *Approved Mortgage Co. v. Truist Bank*, 106 F.4th 582, 595 (7th Cir. 2024) (finding no preemption of claims based on post-transfer conduct); *Elkin Valley Baptist Church v. PNC Bank, N.A.*, 748 F. Supp. 3d 293, 346 n.112 (W.D. Pa. 2024) (collecting cases "finding no preemption of post-transfer claims," cases "finding no preemption of pre-transfer claims," and cases "finding no preemption of both pre- and post-transfer claims"); *see also Regions Bank v. Provident Bank, Inc.*, 345 F.3d 1267, 1279 (11th Cir. 2003) ("We agree with Region's assertion that Article 4A does not preempt a state law claim if money is transferred by wire to a party that knows or should have known that the funds were obtained illegally.").

[66] *Approved Mortgage Co. v. Truist Bank*, 106 F.4th 582 (7th Cir. 2024).

In *Approved Mortgage*, the court held that Indiana's Article 4a equivalent did not preempt a common law negligence claim asserting liability on a beneficiary bank's post-wire transfer conduct. There, the beneficiary's bank received two wire transfers with altered instructions, "deposited the funds into an account it had previously flagged as suspicious, and then allowed the withdrawal of a half-million dollars . . . from that account."[67] The court considered whether the "alleged acts or omissions forming the basis" for the negligence claim were "outside the scope of Article [4a]" and thus preempted.[68] It concluded that acts or omissions such as allowing withdrawal from an account, despite "suspicious circumstances," are not preempted by Article 4a because they "do[] not arise from the wire transfers themselves but from [the bank's] conduct after crediting the transferred funds to the" suspicious account.[69] Rather, the court reasoned that claims based on the harm of allowing withdrawal or not freezing funds "exacerbate[] the earlier transfer injury."[70] And "the later withdrawal of funds obtained in a transfer from the beneficiary's account is not part of th[at] [earlier] transfer."[71] As a result, the court concluded that because Article 4a "does not preempt common law claims for post-transfer activity," a "proposed duty to prevent suspicious withdrawals is not inconsistent with any duty under" Article 4a.[72]

Here, Receiver's common law claims are largely based on Regions Defendants' alleged post-transfer acts and omissions. These include the allowance of "rapid dissipation" of the

[67] *Id.* at 585.
[68] *Id.* at 593.
[69] *Id.* at 594.
[70] *Id.*
[71] *Id.*
[72] *Id.*

Regions Account, "failing to timely freeze or escalate" once wire transfers were returned with "POSSIBLE FRAUD" warnings, "permitting closure of the account . . . without remediation," and "assist[ing] the conversion by processing and permitting rapid dispersals of the funds and failing to act to prevent further loss" despite alleged knowledge of "red flags and fraud notices."[73] Like the *Approved Mortgage* court reasoned, these theories of liability are seemingly based on post-transfer conduct that are not part of the earlier $266,091.80 wire transfer into the Regions Account. Therefore, claims arising out of such post-transfer acts or omissions are not apparently in conflict with or displaced by Article 4a.[74]

However, to the extent that Receiver seeks to hold Regions Defendants' liable for acts or omissions based on allowing the injurious wire transfer itself—which is not conduct that "exacerbates the earlier transfer injury"—that is preempted by Article 4a's funds transfer provisions.[75]

In sum, because Receiver's common law claims appear to be largely based on post-transfer conduct, the court cannot say their preemption is apparent on the face of the Complaint. In other words, it is not clear that Receiver's claims "based on conduct 'which exacerbate[d] the

---

[73] Compl. ¶¶ 56, 60.

[74] Regions Defendants suggest that a duty to freeze funds is displaced by or in conflict with Article 4a's creditor process provision. *See* Regions Bank's Reply 5. But the court is not convinced there is a conflict because (1) there is no creditor process alleged to be involved here, and (2) Receiver's claims do not attempt to hold Regions Defendants liable based on their actions or inactions after being served creditor process. *Cf.* UTAH CODE § 70A-4a-502(5) (restricting the beneficiary's bank from "credit[ing] the beneficiary's account" and "allow[ing] withdrawal of the amount credited" when "creditor process with respect to the account is served at a time and in a manner affording the bank a reasonable opportunity to act to prevent withdrawal").

[75] *Compare* Compl. ¶ 56 (alleging a breach for "permitting a newly opened, minimally funded account to receive a $266,091.80 wire."), *with Approved Mortgage*, 106 F.4th at 594 (preempting claims of negligence for the "receipt of the wire transfers and depositing of the funds into the [suspicious] account" because "[a]llowing a common law claim that [Defendant] was negligent in accepting such transfers would require recognizing . . . duties [that] . . . extend[] beyond those set forth in [Article 4a] to include precautionary measures to prevent misapplied transfers").

earlier transfer injury' are . . . preempted."[76] As such, the court declines to dismiss Receiver's negligence and aiding and abetting claims as preempted by Utah's Article 4a, "except to the extent they are predicated on [Regions Defendants'] conduct in processing the wire transfer itself."[77]

## III. Negligence

In the event the common law claims were not preempted, Regions Defendants moved to dismiss the Receiver's negligence claim on the grounds that it cannot establish that Regions Defendants owed Receiver (a noncustomer) a duty.[78]

"In Utah, a plaintiff bringing a negligence claim must show 'a duty, breach of that duty, causation, and damages.'"[79] Utah courts have held that "[d]uty arises out of the relationship between the parties and imposes a legal obligation on one party for the benefit of the other party."[80] "The issue of whether a duty exists is a question of law to be determined by the court."[81] As such, where there is no duty, "there can be no negligence as a matter of law."[82]

Regions Defendants direct the court to *Legal Tender Services PLLC v. Bank of American Fork*, to support its no-duty argument.[83] There, the Utah Court of Appeals held that "'absent a

---

[76] *See Barents Reinsurance*, 2025 WL 2223190, at *5–6 (reasoning from *Approved Mortgage* and declining to find preemption of a negligence claim on a motion to dismiss where the plaintiff alleged a "failure to secure . . . funds after learning of potential fraud").
[77] *See Elkin Valley Baptist Church*, 784 F. Supp. 3d at 347.
[78] Regions Bank's Mot. 10. Regions Defendants also initially lumped the aiding and abetting claim under its no-duty argument. *Id.* But in response, Receiver asserted that duty is not an element to its aiding and abetting claim, so "Region's no-duty argument does not dispose of [it]." Receiver's Opp'n 10. Because Regions Defendants have not refuted that assertion, the court considers only Regions Defendants' separate arguments against Receiver's aiding and abetting claim.
[79] *Nelson v. Well Fargo Bank, N.A.*, No. 2:25-cv-01106-JNP-DAO, 2026 WL 2797345, at *11 (D. Utah Sept. 18, 2026) (quoting *McCartney v. United States*, 31 F. Supp. 3d 1240, 1242 (D. Utah 2014)).
[80] *Torrie v. Weber Cnty.*, 2013 UT 48, ¶ 9, 309 P.3d 216 (citation modified).
[81] *Hunsaker v. State*, 870 P.2d 893, 897 (Utah 1993).
[82] *Simons v. Sanpete Cnty.*, 2018 UT App 106, ¶ 10. 427 P.3d 467 (citation modified).
[83] *Legal Tender Servs. PLLC v. Bank of Am. Fork*, 2022 UT App 26, 506 P.3d 1211.

customer or contractual relationship,' banks owe noncustomers no duty."[84] And it emphasized that its past caselaw holding the same "more broadly held that banks owe no duty to noncustomers," so "what matters [for duty purposes] is the relationship between the plaintiff and the bank."[85] In support, the court cited to "other courts [that] have reached the same conclusion."[86] The court reasoned that "[b]ecause [plaintiff] was not [bank's] customer, and because [plaintiff] had no contractual relationship with [bank], [bank] owed [plaintiff] no duty. [Plaintiff's] negligence claim against [bank] thus fails."[87] So too here. Because Receiver's Complaint alleges no customer or contractual relationship with Regions Defendants,[88] the Complaint cannot support Regions Defendants owing Receiver a duty under Utah law.

Receiver largely argues that it can establish a duty under an Alabama law "special circumstances" exception to the general no-duty rule.[89] But because Utah law applies to this claim,[90] any special exception under Alabama law is inapposite and does not help Receiver survive a motion to dismiss. Beyond that, Receiver argues in a footnote that *Legal Tender* is distinguishable because it "involved generalized allegations that banks should have prevented or detected fraud," so "the Court should not find as a matter of law that Regions Defendants owed no duty to the Receiver."[91] But simply distinguishing the facts of *Legal Tender* is not enough for

---

[84] *Id.* ¶ 73 (quoting *Ramsey v. Hancock*, 2003 UT App 319, ¶ 17, 79 P.3d 423)).
[85] *Id.* ¶ 75.
[86] *Id.* ¶ 55 (collecting cases).
[87] *Id.* ¶ 73.
[88] *See* Compl. ¶ 21 (alleging that the Regions Account was in the name of a different defendant, A & Bakare 777, LLC).
[89] Receiver's Opp'n 7–10 (citing *Patrick v. Union State Bank*, 681 So.2d 1364 (Ala. 1996); *Smith v. AmSouth Bank, Inc.*, 892 So. 2d 905 (Ala. 2004)).
[90] *See supra* Part I.
[91] Receiver's Opp'n 7 n.1.

Receiver to show that it can establish a duty as a matter of law and, therefore, survive a motion to dismiss.

As such, Receiver's Complaint cannot establish that Regions Defendants owed it a duty of care, so it necessarily fails to state a claim for negligence upon which relief can be granted. Accordingly, Receiver's negligence claim is dismissed with prejudice.[92]

## IV. Aiding and Abetting Fraud/Conversion

Regions Defendants also challenge Receiver's aiding and abetting claim on two grounds: (1) the claim fails because "Utah does not recognize a claim for aiding and abetting fraud,"[93] and (2) Receiver has failed to state a claim for aiding and abetting because it does not allege "an affirmative act" taken by Regions Defendants.[94] However, the court does not decide these issues because Regions Defendants failed to raise these arguments until their reply brief.

The Tenth Circuit has held that courts "generally do not 'review issues raised for the first time in a reply brief, . . . [unless] the new issue argued in the reply brief is offered in response to an argument raised in the [plaintiff's] brief."[95] Allowing otherwise would "deprive the [plaintiff] of the opportunity to respond."[96] Here, Receiver's response brief merely pointed out that Regions Defendants had not specifically challenged its aiding and abetting claim beyond Article 4a preemption. Therefore, Regions Defendants' new arguments on reply "do[] not address an

---

[92] Although Receiver requests leave to amend, Receiver's Opp'n 16, the court determines that any amendment would be futile. "A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006). Because Receiver cannot establish a duty owed by Regions Defendants under Utah law, granting Receiver leave to amend could not rescue the claim.
[93] Regions Bank's Reply 8 (citation omitted).
[94] *Id.*
[95] *In re Gold Resource Corp. Securities Litigation*, 776 F.3d 1103, 1119 (10th Cir. 2015) (quoting *Beaudry v. Corr. Corp. of Am.*, 331 F.3d 1164, 1166 n.3 (10th Cir. 2003)).
[96] *Geringer v. Strong*, 766 F. App'x 620, 625 n.4 (10th Cir. 2019) (unpublished).

issue raised in Plaintiff's response and instead raises . . . new issue[s] not mentioned in the motion to dismiss. The court cannot properly consider [these] issue[s]."[97]

Thus, the court declines to dismiss Receiver's aiding and abetting claim on the belated challenges.

**ORDER**

Regions Defendants' motions to dismiss Receiver's Complaint are GRANTED in part and DENIED in part.[98]

1. As to the Complaint's Fifth Claim for Relief (Negligence), the motions are GRANTED. The claim is dismissed with prejudice.
2. As to the Complaint's Sixth Claim for Relief (Aiding and Abetting Fraud/Conversion), the motions are DENIED.

Signed November 16, 2026.

BY THE COURT

David Barlow
United States District Judge

[97] *See Edwards ex rel. Edwards v. Metropolitan Life Ins. Co.*, No. 1:26-cv-00042-JNP-CMR, 2026 WL 3268507, at *2 (D. Utah Oct. 30, 2026).
[98] ECF Nos. 17, 38.